# In the United States Court of Federal Claims

No. 15-123C
Filed: February 29, 2016

```
************************************************
                                               *
SUSAN STANFORD,                                *
                                               *
            Plaintiff,                         *
                                               *
v.                                             *
                                               *
THE UNITED STATES,                             *
                                               *
            Defendant.                         *
                                               *
************************************************
```

28 U.S.C. § 1491
  (Tucker Act Jurisdiction);
Rules of the United States Court of
  Federal Claims ("RCFC"),
  RCFC 12(b)(1) (Motion To
  Dismiss).

**Michael D. Sydow**, The Sydow Firm, Houston, Texas, Counsel for Plaintiff.

**Mariana T. Acevedo**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER REGARDING THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN**, *Judge*.

## I.   RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

### A.   Factual Background And Related Court Proceedings.

On August 16, 1975, Susan Williams and Robert Allen Stanford were married.  Compl. ¶ 4.  On November 5, 2007, Mrs. Stanford filed a suit in the Harris County District Court for the 308th Judicial District of Texas ("Texas State Court") to dissolve her marriage with Mr. Stanford ("Divorce Decree").  Gov't App. A147.

---

[1] The relevant facts were derived from: the February 9, 2015 Complaint; the Appendix to the Government's May 26, 2015 Motion To Dismiss ("Gov't App. A1–A377"); and the Supplemental Appendix to Plaintiff's August 31, 2015 Response ("Pl. Supp. App. 378–496").  *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

### B.    Proceedings Before The United States District Court For The Northern District Of Texas.

In 2009, the Securities and Exchange Commission (the "SEC") filed a civil enforcement suit against Mr. Stanford and his corporate holdings in the United States District Court for the Northern District of Texas ("Texas District Court"), for his involvement in an alleged multi-billion dollar financial fraud.  Gov't App. A99–A108.

On February 16, 2009, the Texas District Court issued a Temporary Restraining Order that froze Mr. Stanford's assets, required an accounting, and prohibited the destruction of documents. Gov't App. A99.  That same day, the Texas District Court issued an Order Appointing Receiver to "prevent waste and dissipation of the assets of [Mr. Stanford] to the detriment of investors." Gov't App. A109.  In addition, the Texas District Court asserted custody over the "Receivership Assets"[2] and the "Receivership Records."[3]  Gov't App. A109–10.  The Receiver was to be responsible for "perform[ing] all acts necessary to conserve, hold, manage and preserve the value of the Receivership Estate."[4]  Gov't App. A110, A113.

On March 12, 2009, the Texas District Court issued a Preliminary Injunction And Other Equitable Relief enjoining Mr. Stanford from "directly or indirectly, making any payment or expenditure of funds" in his "possession, custody, or control . . . pending a showing [that he] has sufficient funds or assets to satisfy all claims arising out of the violations alleged" by the SEC. Gov't App. A139.

On May 27, 2009, Mrs. Stanford filed a Motion to intervene in the Texas District Court civil enforcement action alleging that she is the one-half owner of the assets in the "Receivership Estate."  Gov't App. A147, A159.  On January 6, 2010, the Texas District Court granted that Motion.  Gov't App. A171.

On November 15, 2010, the Receiver filed a Complaint in the Texas District Court alleging that Mrs. Stanford received approximately $2.5 million from Mr. Stanford and his corporate holdings. Gov't App. A284–A301.  Pursuant to the Uniform Fraudulent Transfer Act, the Receiver

---

[2] The February 16, 2009 Order defines "Receivership Assets" as the "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities), of the Defendants and all entities they own or control[.]"  Gov't App. A109.

[3] The February 16, 2009 Order defines "Receivership Records" as "books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers telephones, personal digital devices and other informational resources of or in possession of the Defendants, or issued by Defendants and in possession of any agent or employee of the Defendants[.]"  Gov't App. A109–10.

[4] The February 16, 2009 Order issued by the Texas District Court determined collectively that the "Receivership Assets" and the "Receivership Records" comprised the "Receivership Estate."  Gov't App. A110.

is authorized to disgorge the proceeds fraudulently transferred to Mrs. Stanford.  *See* Tex. Bus. & Com. Code Ann § 24.008; *see also* Gov't App. A293–97.

Instead of responding to the Receiver's November 15, 2010 Complaint, on October 26, 2011, Mrs. Stanford signed a Settlement Agreement agreeing to release any and all claims she may have against the "Receivership Estate." Gov't App. A324.  Specifically, the Settlement Agreement provided:

> Susan Stanford . . . releases and discharges . . . the Receivership Estates, the Receiver and the Committee[5] . . . from any and all claims, causes of action, suits, rights, disputes, liabilities costs, expenses, damages, or demands, arising prior to the date of this Agreement, known or unknown, foreseen or unforeseen, contingent or vested, arising by subrogation, assignment, reimbursement, operation of law, or otherwise, relating to, arising out of, or in any way connected with . . . all . . . properties or assets of the Receivership Estates, or the Stanford Entities.

Gov't. App. 318–19.

On December 29, 2011, the Texas District Court approved the Settlement Agreement and dismissed the Receiver's claims against Mrs. Stanford with prejudice.  Gov't App. A360.

On April 25, 2013, the Texas District Court granted partial summary judgment in favor of the SEC in the civil enforcement case, ordered disgorgement of the fraudulent proceeds, and imposed a $5.9 billion penalty against Mr. Stanford.  Gov't App. A239–55.

On May 30, 2013, the Texas District Court approved the Receiver's Interim Distribution Plan and distribution to investors was to commence on August 30, 2013.  Gov't App. A256–76.

### C.    Proceedings Before The Harris County District Court For The 308th Judicial District Of Texas.

On July 12, 2013, the Harris County District Court for the 308th Judicial District of Texas issued a Final Decree of Divorce to Susan Stanford.  Pl. Supp. App. A430–34.  Pursuant to the Divorce Decree, Susan Stanford and Robert Allen Stanford agreed that:

---

[5] The "Committee" is the representative of the customers of Mr. Stanford's corporate holdings that, "as of February 16, 2009, had funds on deposit at [Stanford International Bank, Ltd.] and/or were holding certificates of deposit issued by [Stanford International Bank, Ltd.]." Gov't App. A187.

> Each party hereby agrees that any *remaining* community property of the parties *not under the control* of the [United States] receiver is hereby divided by the parties, one half to ROBERT ALLEN STANFORD and one half to SUSAN STANFORD.

Pl. Supp. App. A432 (emphasis added).

### D.    Proceedings Before The United States Court Of Federal Claims.

On February 9, 2015, Susan Stanford ("Plaintiff") filed a Complaint in the United States Court of Federal Claims, alleging that the February 16, 2009 Order that the SEC obtained from the Texas District Court was invalid, because "the United States Court of Appeals for the Federal Circuit held that the debt instruments in question were not 'securities.'" Compl. ¶ 8.  Therefore, the "United States . . . had no right to appoint a receiver and/or seize the assets in question." Compl. ¶ 8.  In addition, "[t]he assets taken and sold by the United States were community assets[,]" that, "[p]ursuant to [the Divorce Decree], Plaintiff is the owner of one-half of all community assets." Compl. ¶ 9.  Therefore, the United States must pay Plaintiff for the property taken and sold, which is valued, at minimum, at $12 billion.  Compl. ¶ 10.

On February 17, 2015, R. Allen Stanford filed a Motion To Intervene.

On March 3, 2015 and May 11, 2015, the Government filed Motions For Extension Of Time to respond to the February 9, 2015 Complaint and February 17, 2015 Motion To Intervene, that the court respectively granted on March 4, 2015 and May 12, 2015.

On May 26, 2015, the Government filed a Motion To Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  On August 31, 2015, Plaintiff filed a Response ("Pl. Resp.").  On October 15, 2015, the Government filed a Reply. On January 12, 2016, the Government filed a Notice Of Additional Authority to inform the court that the United States Court of Appeals for the Fifth Circuit affirmed Robert Allen Stanford's criminal convictions on multiple counts of conspiracy to commit wire and mail fraud, substantive counts of wire and mail fraud, conspiracy to obstruct a SEC investigation and obstruction of a SEC investigation.  *See United States v. Stanford*, 805 F.3d 557, 563 (5th Cir. 2015).

## II.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . .  [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, Plaintiffs must identify and plead a constitutional provision, federal statute, executive agency regulation and/or an independent

contractual relationship that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, Plaintiffs must demonstrate that the source of substantive law upon which they rely "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**B.    Whether The Court Has Jurisdiction Over The February 9, 2015 Complaint.**

**1.    Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defense[] by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

**2.    The Court's Resolution.**

In this case, Plaintiff avers that she does not challenge the Texas District Court's appointment of the Receiver, but asks the United States Court of Federal Claims to adjudicate "whether the SEC's assertion of jurisdiction over her by seeking and obtaining the receivership worked a taking of her property[.]" Pl. Resp. at 19. To ascertain whether the SEC had authority to seek and obtain receivership in the Texas District Court necessarily requires a review of the authority of the SEC and propriety of the Texas District Court's decision to appoint a receiver. The court, however, does not have jurisdiction to adjudicate the enforcement authority of the SEC nor the decisions of a United States District Court. *See Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the United States Court of Federal Claims "does not have jurisdiction to review the decisions of district courts"); *see also Vereda v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he [United States] Court of Federal Claims cannot consider [Plaintiff's] arguments as to the substantive decisions underlying [court action].").

Moreover, even if the court had jurisdiction over takings claim alleged in the February 9, 2015 Complaint, Plaintiff has no cognizable property interest in the "Receivership Estate," because Plaintiff released "all claims[ or] causes of action" against the Receiver and the Committee "relating to, arising out of, or in any way connected with . . . all [the] properties or assets of the Receivership Estates[.]" Gov't App. A318–19.

## III.     CONCLUSION.

For the reasons discussed herein, the Government's May 26, 2015 Motion To Dismiss is granted.  *See* RCFC 12(b)(1).  As such, Mr. Stanford's February 17, 2015 Motion To Intervene is denied as moot.  The Clerk of Court is directed to dismiss Plaintiff's February 9, 2015 Complaint.

**IT IS SO ORDERED.**

<u>*s/* Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**